**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Action No. 16-CV-00545-CG** |
| **v.** | * | |
| | * | |
| | * | |
| **APPROXIMATELY $299,873.70 SEIZED** | * | |
| **FROM A BANK OF AMERICA ACCOUNT** | * | |
| **ENDING IN THE NUMBER 5538 HELD** | * | |
| **BY AN INDIVIDUAL IDENTIFIED AS P.Q.;** | * | |
| | * | |
| **APPROXIMATELY $191,260.60 SEIZED** | * | |
| **FROM A BANK OF AMERICA ACCOUNT** | * | |
| **ENDING IN THE NUMBER 5300 HELD** | * | |
| **BY AN INDIVIDUAL IDENTIFIED AS L.Z.;** | * | |
| | * | |
| **APPROXIMATELY $299,945.00 SEIZED** | * | |
| **FROM AN EAST WEST BANK ACCOUNT** | * | |
| **ENDING IN THE NUMBER 8106 HELD** | * | |
| **BY AN INDIVIDUAL IDENTIFIED AS M.J.;** | * | |
| | * | |
| **APPROXIMATELY $299,970.00 SEIZED** | * | |
| **FROM AN EAST WEST BANK ACCOUNT** | * | |
| **ENDING IN THE NUMBER 9203 HELD** | * | |
| **BY AN INDIVIDUAL IDENTIFIED AS Q.X.;** | * | |
| | * | |
| **APPROXIMATELY $249.927.14 SEIZED** | * | |
| **FROM AN EAST WEST BANK ACCOUNT** | * | |
| **ENDING IN THE NUMBER 4809 HELD** | * | |
| **BY AN INDIVIDUAL IDENTIFIED AS Q.Z.;** | * | |
| | * | |
| **APPROXIMATELY $297,110.00 SEIZED** | * | |
| **FROM AN EAST WEST BANK ACCOUNT** | * | |
| **ENDING IN THE NUMBER 4817 HELD** | * | |
| **BY AN INDIVIDUAL IDENTIFIED AS W.H.;** | * | |
| | * | |
| **APPROXIMATELY $278,952.11 SEIZED** | * | |
| **FROM AN EAST WEST BANK ACCOUNT** | * | |
| **ENDING IN THE NUMBER 4841 HELD** | * | |
| **BY AN INDIVIDUAL IDENTIFIED AS M.Y.;** | * | |
| | * | |

1

**APPROXIMATELY \$12,367.82 SEIZED**    \*
**FROM AN EAST WEST BANK ACCOUNT**    \*
**ENDING IN THE NUMBER 8131 HELD**    \*
**BY AN INDIVIDUAL IDENTIFIED AS X.Z.;**    \*
   \*
**APPROXIMATELY \$249,816.00 SEIZED**    \*
**FROM AN EAST WEST BANK ACCOUNT**    \*
**ENDING IN THE NUMBER 8289 HELD**    \*
**BY AN INDIVIDUAL IDENTIFIED AS H.C.;**    \*
   \*
**APPROXIMATELY \$281,110.00 SEIZED**    \*
**FROM AN EAST WEST BANK ACCOUNT**    \*
**ENDING IN THE NUMBER 2471 HELD**    \*
**BY AN INDIVIDUAL IDENTIFIED AS Z.D.;**    \*
   \*
**APPROXIMATELY \$299,985.00 SEIZED**    \*
**FROM A J.P. MORGAN CHASE ACCOUNT**    \*
**ENDING IN THE NUMBER 6781 HELD**    \*
**BY AN INDIVIDUAL IDENTIFIED AS W.W.;**    \*
   \*
**APPROXIMATELY \$299,852.00 SEIZED**    \*
**FROM A J.P. MORGAN CHASE ACCOUNT**    \*
**ENDING IN THE NUMBER 2200 HELD**    \*
**BY AN INDIVIDUAL IDENTIFIED AS Y.Q.;**    \*
   \*
**APPROXIMATELY \$76,604.55 SEIZED**    \*
**FROM A J.P. MORGAN CHASE ACCOUNT**    \*
**ENDING IN THE NUMBER 1070 HELD**    \*
**BY AN INDIVIDUAL IDENTIFIED AS Z.X.;**    \*
   \*
**APPROXIMATELY \$300,000.00 SEIZED**    \*
**FROM A J.P. MORGAN CHASE ACCOUNT**    \*
**ENDING IN THE NUMBER 3506 HELD**    \*
**BY AN INDIVIDUAL IDENTIFIED AS J.W.;**    \*
   \*
**APPROXIMATELY \$299,983.49 SEIZED**    \*
**FROM A J.P. MORGAN CHASE ACCOUNT**    \*
**ENDING IN THE NUMBER 0350 HELD**    \*
**BY AN INDIVIDUAL IDENTIFIED AS L.G.;**    \*
   \*
**APPROXIMATELY \$199,907.52 SEIZED**    \*
**FROM A J.P. MORGAN CHASE ACCOUNT**    \*
**ENDING IN THE NUMBER 4526 HELD**    \*
**BY AN INDIVIDUAL IDENTIFIED AS R.J.;**    \*
   \*
   \*

2

| | |
|---|---|
| **APPROXIMATELY $149,759.17 SEIZED** | * |
| **FROM A J.P. MORGAN CHASE ACCOUNT** | * |
| **ENDING IN THE NUMBER 5465 HELD** | * |
| **BY AN INDIVIDUAL IDENTIFIED AS G.G.;** | * |
| **AND** | * |
| | * |
| **APPROXIMATELY $299,000.00 SEIZED** | * |
| **FROM A J.P. MORGAN CHASE ACCOUNT** | * |
| **ENDING IN THE NUMBER 5906 HELD** | * |
| **BY AN INDIVIDUAL IDENTIFIED AS J.D.,** | * |
| | * |
| **Defendants-in-rem.** | * |

### VERIFIED COMPLAINT FOR CIVIL FORFEITURE *IN REM*

Comes now the United States of America, by and through the United States Attorney for the Southern District of Alabama, and brings this verified Complaint for civil forfeiture *in rem*, with the following allegations:

### I.    NATURE OF THE ACTION

1.    This is a civil action to forfeit to the United States the below-described defendants *in rem* (or "Defendant Funds") pursuant to Title 18, United States Code, Section 981(a)(1)(A), which subjects to civil forfeiture any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956 (regarding the laundering of monetary instruments) and any property traceable to such property.

### II.    THE DEFENDANTS *IN REM*

2.    The Defendant Funds, which cumulatively amount to approximately $4,385,424.10 in United States Currency, are more fully identified as follows:

(1)    $299,873.70 in United States Currency seized from a Bank of America account ending in 5538 held by an individual identified herein as P.Q.;

(2)    $191,260.60 in United States Currency seized from a Bank of America account ending in 5300 held by an individual identified herein as L.Z.;

3

(3) $299,945.00 in United States Currency seized from an East West Bank account ending in 8106 held by an individual identified herein as M.J.;

(4) $299,970.00 in United States Currency seized from an East West Bank account ending in 9203 held by an individual identified herein as Q.X.;

(5) $249,927.14 in United States Currency seized from an East West Bank account ending in 4809 held by an individual identified herein as Q.Z.;

(6) $297,110.00 in United States Currency seized from an East West Bank account ending in 4817 held by an individual identified herein as W.H.;

(7) $278,952.11 in United States Currency seized from an East West Bank account ending in 4841 held by an individual identified herein as M.Y.;

(8) $12,367.82 in United States Currency seized from an East West Bank account ending in 8131 held by an individual identified herein as X.Z.;

(9) $249,816.00 in United States Currency seized from an East West Bank account ending in 8289 held by an individual identified herein as H.C.;

(10) $281,110.00 in United States Currency seized from an East West Bank account ending in 2471 held by an individual identified herein as Z.D.;

(11) $299,985.00 in United States Currency seized from a J.P. Morgan Chase account ending in 6781 held by an individual identified herein as W.W.;

(12) $299,852.00 in UNITED STATES Currency seized from a J.P. Morgan Chase account ending in 2200 held by an individual identified herein as Y.Q.;

(13) $76,604.55 in United States Currency seized from a J.P. Morgan Chase account ending in 1070 held by an individual identified herein as Z.X.;

(14) $300,000.00 in United States Currency seized from a J.P. Morgan Chase account ending in 3506 held by an individual identified herein as J.W.;

(15) $299,983.49 in United States Currency seized from a J.P. Morgan Chase account ending in 0350 held by an individual identified herein as L.G.;

(16) $199,907.52 in United States Currency seized from a J.P. Morgan Chase account ending in 4526 held by an individual identified herein as R.J.;

(17) $149,759.17 in United States Currency seized from a J.P. Morgan Chase account ending in 5465 held by an individual identified herein as G.G.; and

4

(18)  $299,000.00 in United States Currency seized from a J.P. Morgan Chase account ending in 5906 held by an individual identified herein as J.D.

## III.   JURISDICTION AND VENUE

3.      This Court has jurisdiction over this civil action pursuant to Title 28, United States Code, Section 1345 because this action has been commenced by the United States, and also pursuant to Title 28, United States Code, Section 1355(a) because this is an action for the recovery and enforcement of a forfeiture action under an Act of Congress.

4.      Venue is proper under Title 28, United States Code, Section 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred within the Southern District of Alabama, and under Title 28, United States Code, Section 1355(b)(1)(B), incorporating Title 28, United States Code, Section 1395(a), because a civil proceeding for the recovery of a pecuniary fine, penalty, or forfeiture may be prosecuted in the district where it accrues or the defendant is found.

5.      The Defendant Funds are currently held in United States government accounts and will remain within the jurisdiction of this Court during the pendency of this action.

6.      On June 1, 2016, the Honorable Katherine P. Nelson, United States Magistrate Judge for the Southern District of Alabama, authorized the seizure of the Defendant Funds based upon probable cause to believe that the Defendant Funds are subject to forfeiture to the United States under Title 18, United States Code, Section 981(a)(1)(A).

7.      Upon the filing of this Complaint, the Plaintiff requests that this Court issue a warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i) of the Federal Rules of Civil Procedure, which the Plaintiff will execute upon the Defendant Funds pursuant to Title 28, United States Code, Section 1355(d) and Supplemental Rule G(3)(c).

## IV.    SUPPORTING FACTS

### A.  OVERVIEW OF THE EB-1 VISA PROGRAM

8.     The United States government, through United States Citizenship and Immigration Services (CIS), a component of the United States Department of Homeland Security, offers multiple avenues whereby foreign nationals can legally immigrate to the United States for purposes of employment. To obtain visa benefits for an immigrant employee, a United States business, whether an individual or another business entity, must file a Form I-140 Immigrant Petition for Alien Worker.

9.     The employment-based visa programs are grouped into five areas referred to as EB-1 through EB-5, with the letters "EB" designating them as employment-based programs. Each of the five areas has specific criteria that must be fulfilled before an individual is eligible to immigrate to the United States under that particular provision of the law.

10.     Immigrants who fulfill the specific criteria to be eligible for a visa under EB-1 are not subject to the United States annual numerical immigration quotas for citizens from their country, as are immigrants applying for other types of visas. Furthermore, such immigrants do not have to wait for Department of Labor certifications as do immigrants entering the United States through some other employment-based petition. Thus, immigrants eligible for a visa under EB-1 have distinct advantages over those who are applying for entry under other visa programs.

11.     A potential immigrant to the United States who applies for a visa under the EB-1 program must satisfy the specific requirements detailed in one of three categories, referred to as EB-1A, EB-1B and EB-1C.[1] The fraudulent scheme detailed herein relates to the EB-1C program.

---

1      These visas are also referred to as EB-11, EB-12, and EB-13, respectively.

6

12.    To qualify for a visa under the EB-1C program, an individual must meet specific requirements that establish them as a multinational manager or executive. These requirements are set out in Title 8, Code of Federal Regulations, Section 204.5(j):

13.    Various types of evidence must be submitted to CIS to establish the eligibility of the multinational manager or executive. The relevant regulations, which are found in 8 C.F.R. § 204.5(j)(3)(i), provide:

(i)    A petition for a multinational executive or manager must be accompanied by a statement from an authorized official of the petitioning United States employer which demonstrates that:

(A)    If the alien is outside the United States, in the three years immediately preceding the filling of the petition, the alien has been employed outside the United States for at least one year in a managerial or executive capacity by a firm or corporation, or other legal entity, or by an affiliate or subsidiary of such a firm or corporation or other legal entity; or

(B)    If the alien is already in the United States working for the same employer or a subsidiary or affiliate of the firm or corporation, or other legal entity by which the alien was employed overseas, in the three years preceding entry as a nonimmigrant, the alien was employed by the entity abroad for at least one year in a managerial or executive capacity;

(C)    The prospective employer in the United States is the same employer or a subsidiary or affiliate of the firm or corporation or other legal entity by which the alien was employed overseas; and

(D)    The prospective United States employer has been doing business for at least one year.

14.    The "firm or corporation" referred to in Subsections (B) and (C) above is the company filing the petition on behalf of the multinational executive or manager. Multiple meanings for the term "subsidiary," as used in Subsections (B) and (C) above, are included in 8 C.F.R. 204.5(j)(2). One such meaning is "a firm, corporation, or other legal entity of which a

7

parent owns . . . directly or indirectly, 50 percent of a 50/50 joint venture and has equal control and veto power over the entity; or owns, directly or indirectly, less than half of the entity, but in fact controls the entity."

15.     When used as intended, the EB-1C program can assist United States businesses interested in expanding their operations by partnering with overseas businesses with experience and expertise in a particular industry.  The program allows talented executives and managers from these countries to immigrate to the United States and assume a managerial role in the newly formed joint venture.  The skills and insights of these foreign nationals can often be of great benefit to the joint venture, and lead to greater efficiency, productivity, and profits for the United States business.

16.     Once an EB-1C visa is obtained, it is typically an easy matter for the foreign national to become a lawful permanent resident of the United States.  In addition, once the EB-1C petition is approved, it is typically an easy matter for the foreign national's spouse and unmarried children to immigrate to the United States.

### B.  Overview of Scheme

17.     The fraud scheme set out in this Complaint was designed to allow nationals of the People's Republic of China to rapidly immigrate to the United States without the restrictions and delays typically experienced in connection with the process.

18.     To accomplish this scheme, EB-1C petitions were filed for these Chinese nationals by United States businesses.  In each instance, the petitions filed by the United States businesses indicated that the Chinese nationals were executives at a Chinese company that had entered into a joint venture with the United States-based business to be operated in the United States.

19.     The Chinese national was supposedly attempting to immigrate to the United States in order to assume a high-level executive position with the newly formed joint venture.  In reality,

8

however, the joint ventures were nothing more than fraudulent agreements that were never intended to become operational.

20.     The extensive documentation filed with CIS in connection with each of these petitions was part of an elaborate attempt to allow Chinese nationals to gain EB-1C visas to which they were not entitled.

### C.  Chinese and United States Co-Conspirators

21.     The visa fraud scheme — and the associated money laundering scheme designed to facilitate the visa fraud scheme — was orchestrated by a group of co-conspirators located in China, Canada, the United States, and elsewhere.

22.     *China Co-Conspirators*:  The entire visa fraud scheme was predicated upon the fact that certain Chinese nationals desired to immigrate to the United States. These Chinese nationals were identified and located by an individual referred to herein as "China Co-conspirator A," and others working with him. China Co-conspirator A is the chairman of a China-based company identified herein as the "China Company." The China Company utilized bank accounts associated with banks in Hong Kong. At least two other individuals located in China actively participated in this scheme with China Co-conspirator A. These individuals are identified herein as "China Co-conspirator B" and "China Co-conspirator C". China Co-conspirator B is the wife of China Co-conspirator A, and China Co-conspirator C is a female associate employed by China Co-conspirator A in the China Company.  These China Co-conspirators communicated regularly with each other and the other Co-conspirators, via e-mail and otherwise, and with many of the other Co-conspirators named herein, in furtherance of this visa fraud scheme.

23.     China Co-conspirator A had a large number of Chinese nationals (hereinafter "clients") wanting to immigrate to the United States through this visa scheme, but he did not have

9

the ability to personally recruit business owners in the United States to file petitions on behalf of the Chinese nationals. The recruiting aspect of the conspiracy was the responsibility of other individuals located in the United States, Canada, and elsewhere. The visa fraud scheme, in order to be successfully carried out, required the participation of the United States Co-conspirators.

24. *United States Co-conspirators*: The United States Co-conspirators involved in this visa fraud scheme included, among others, Christopher Allen Dean (Dean)**,** and individuals identified herein as "Co-conspirators D, E, F, and G".

    a. *Co-conspirator D*: Business cards for the China Company identify Co-conspirator D as the United States Chief Operating Officer and the United States Marketing Manager. Co-conspirator D resides in south Florida.

    b. *Co-conspirator E:* Business cards for the China Company identify Co-conspirator E as also the United States Marketing Manager. Co-conspirator E, also a resident of south Florida, actively participated in the scheme as an assistant to Co-conspirator D, and was often responsible for gathering necessary documents to further the scheme.

    c. *Co-conspirator F:* Business cards for the China Company identify Co-conspirator F as the Global Marketing Director. Co-Conspirator F is related by marriage to Co-Conspirator D.

    d. *Co-conspirator G:* Co-conspirator G, based in Canada and Illinois, served as an advisor to, and representative of, China Co-conspirator A, in furtherance of the scheme. On at least one occasion in 2015, Co-conspirator G traveled to the Southern District of Alabama and met with Dean for the purpose of furthering the visa fraud scheme.

    e. Dean and Co-conspirators D, E, and F operated primarily in southern Alabama and south Florida.

### D. Dean's Involvement in Money Laundering and Visa Fraud Scheme

25. In 2010, Dean met Co-conspirator F while Dean was seeking investors for his business located in Eight Mile, Alabama. At that time, Dean believed Co-conspirator F to be an immigration consultant. Co-conspirator F told Dean that he could help Dean find Chinese investors, and offered to pay for Dean's travel to China for that purpose.

26.     During the first trip to China, Dean met with four Chinese businessmen, as well as Co-conspirators D and F.  However, none of the Chinese businessmen agreed to invest money in Dean's business. While in China, Dean attended a meeting between China Co-conspirator A and Co-conspirators D and F.  Dean obtained a business card from China Co-conspirator A.

27.     After returning from this first trip to China, Co-conspirator D encouraged Dean to submit an EB-1C petition for one of the Chinese businessmen Dean had met during the initial trip. Dean agreed to do so and filed a petition through his Alabama business.  The petition included a joint venture agreement signed by Dean in late 2011.

28.     The EB-1C petition filed by Dean was approved in September 2012.  However, no joint venture or business relationship ever existed between Dean, Dean's business in Eight Mile, Alabama, the Chinese businessman, or any China-based business.

29.     In November 2012, Dean received a wire transfer totaling $21,000 from a business account belonging to Co-conspirator D for Dean's role and participation in the fraudulent EB-1C petition referenced in paragraphs 27–28 above.

30.     At some point after receiving this wire transfer, Dean learned that China Co-conspirator A was the source of the Chinese nationals who wanted to immigrate to the United States under the fraudulent EB-1C scheme.  Dean contacted China Co-conspirator A, and they agreed that Dean would recruit United States business owners who were willing to enter into joint ventures in exchange for money.  These business owners would then file EB-1C petitions on behalf of China Co-conspirator A's clients.

31.     On October 20, 2016, the United States Attorney charged Dean with knowingly and willfully participating in a money laundering conspiracy with China Co-conspirators A, B, and C, as well as Co-conspirators D, E, and F.

### E. How the Money Laundering Component of the Visa Fraud Scheme Operated

32.     When China Co-conspirator A had a client desiring to immigrate to the United States, it was the role of the United States Co-conspirators to find business owners who were willing to file a fraudulent EB-1C petition on behalf of the Chinese national.

33.     After Dean and/or Co-conspirators D, E, F, and G successfully recruited a United States business owner to be part of the scheme, the business owner was typically paid $3,000 for agreeing to sign forms relating to the non-existent joint venture and for allowing the petition to be filed in their business name.  Paperwork describing the fictitious joint venture was frequently back-dated.  This was done because regulations required that a joint business venture be in place for at least one year before the EB-1C visa petition could be submitted to CIS.  By back-dating the paperwork, the Chinese national could enter the United States sooner on the fraudulently obtained EB-1C visa.

34.     If the petition was ultimately approved, the business owner typically received additional payments totaling approximately $27,000.  The payments to the United States business owners were made by Dean and/or Co-conspirator D from funds sent by China Co-conspirators A and B, and the China Company, from banks in Hong Kong.

35.     Through this scheme, Chinese nationals typically paid approximately $300,000 to enter the United States through the fraudulent EB-1C scheme. This was comprised of a $100,000 upfront fee, and then an additional charge of $200,000 if the fraudulent EB-1C petition was approved.  It is not known whether the money was actually paid by the Chinese national or paid by some other person or entity on behalf of the Chinese national.

36.     In addition to the $300,000 described in the paragraph above, more money for a particular Chinese national was placed in a bank account either in the United States or in Hong

Kong, typically under the same name as the name of the beneficiary on the fraudulent EB-1C petition. This was done purposefully so that when the petition was reviewed by CIS, it appeared that the Chinese national actually had substantial money available for the supposed joint venture once the EB-1C petition was approved. Examples of this included, but were not limited to, the following:

    a. On or about March 24, 2014, a business in Pascagoula, Mississippi filed a fraudulent EB-1C petition on behalf of an individual identified herein as P.Q. Documentation in this EB-1C petition indicated that at least $300,000.00 already in a Bank of America account ending in 5538 and held in the name of P.Q. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Dean.

    b. On or about December 5, 2013, a business in San Antonio, Texas filed a fraudulent EB-1C petition on behalf of an individual identified herein as L.Z. Documentation in this EB-1C petition indicated that at least $300,000.00 already in a Bank of America account ending in 5300 and held in the name of L.Z was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by China Co-conspirator C and Dean.

    c. On or about August 11, 2014, a business in Pensacola, Florida filed a fraudulent EB-1C petition on behalf of an individual identified herein as M.J. Documentation in this EB-1C petition indicated that at least $300,000.00 already in an East West Bank account ending in 8106 and held in the name of M.J. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by Dean and another individual.

    d. On or about August 29, 2014, a business in Springfield, Ohio filed a fraudulent EB-1C petition on behalf of an individual identified herein as Q.X. Documentation in this EB-1C petition indicated that at least $300,000.00 already in an East West Bank account ending in 9203 and held in the name of Q.X. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by Dean and another individual.

    e. On or about June 13, 2012, and then again on or about September 23, 2013, a business in Mobile, Alabama filed a fraudulent EB-1C petition on behalf of an individual identified herein as Q.Z. Documentation in this EB-1C petition indicated that at least $249,984.56 already in an East

West Bank account ending in 4809 and held in the name of Q.Z. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Co-conspirator D.

f.  On or about October 26, 2012, a business in Daphne, Alabama filed a fraudulent EB-1C petition on behalf of an individual identified herein as W.H. Documentation in this EB-1C petition indicated that at least $300,000.00 already in an East West Bank account ending in 4817 and held in the name of W.H. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Co-conspirator D.

g.  On or about October 18, 2013, a business in Saraland, Alabama filed a fraudulent EB-1C petition on behalf of an individual identified herein as M.Y. Documentation in this EB-1C petition indicated that at least $279,000.00 already in an East West Bank account ending in 4841 and held in the name of M.Y. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Dean.

h.  On or about March 10, 2014, a business in Davie, Florida filed a fraudulent EB-1C petition on behalf of an individual identified herein as X.Z. Documentation in this EB-1C petition indicated that at least $300,000.00 already in an East West Bank account ending in 8131 and held in the name of X.Z. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Co-conspirator D.

i.  On or about May 14, 2014, a business in East Brewton, Alabama filed a fraudulent EB-1C petition on behalf of an individual identified herein as H.C. Documentation in this EB-1C petition indicated that at least $249,891.00 already in an East West Bank account ending in 8289 and held in the name of H.C. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Dean.

j.  On or about May 27, 2015, a business in Miami, Florida filed a fraudulent EB-1C petition on behalf of an individual identified herein as Z.D. Documentation in this EB-1C petition indicated that at least $281,200.00 already in an East West Bank account ending in 2471 and held in the name of Z.D. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by Co-conspirator D and Co-conspirator E.

14

k.  On or about March 21, 2012, a business in Mobile, Alabama filed a fraudulent EB-1C petition on behalf of an individual identified herein as W.W.  Documentation in this EB-1C petition indicated that at least $300,000.00 already in a J.P. Morgan Chase account ending in 6781 and held in the name of W.W. was intended to be invested in the fictitious joint venture.  This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Co-conspirator D.

l.  On or about February 7, 2013, and then again on or about July 7, 2014, a business in Pembroke Pines, Florida filed a fraudulent EB-1C petition on behalf of an individual identified here in as Y.Q.  Documentation in this EB-1C petition indicated that a least $299,941.28 already in a J.P. Morgan Chase account ending in 2200 and held in the name of Y.Q. was intended to be invested in the fictitious joint venture.  This fraudulent EB-1C petition was facilitated by Co-conspirator D and Co-conspirator E.

m.  On or about October 8, 2013, a business in Pensacola, Florida filed a fraudulent EB-1C petition on behalf of an individual identified herein as Z.X.  Documentation in this EB-1C petition indicated that at least $165,027.25 already in a J.P. Morgan Chase account ending in 1070 and held in the name of Z.X. was intended to be invested in the fictitious joint venture.  This fraudulent EB-1C petition was facilitated by Co-conspirator D.

n.  On or about February 6, 2014, a business in Mesquite, Texas filed a fraudulent EB-1C petition on behalf of an individual identified herein as J.W.  Documentation in this EB-1C petition indicated that at least $300,000.00 already in a J.P. Morgan Chase account ending in 3506 and held in the name of J.W. was intended to be invested in the fictitious joint venture.  This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Dean.

o.  On or about October 16, 2013, a business in Saraland, Alabama filed a fraudulent EB-1C petition on behalf of an individual identified herein as L.G.  Documentation in this EB-1C petition indicated that at least $300,000.00 already in a J.P. Morgan Chase account ending in 0350 and held in the name of L.G. was intended to be invested in the fictitious joint venture.  This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Dean.

p.  On or about May 10, 2012, a business in Fort Lauderdale, Florida filed a fraudulent EB-1C petition on behalf of an individual identified herein as R.J.  Documentation in this EB-1C petition and in bank records indicated that at least $200,000.00 already in a J.P. Morgan Chase

15

account ending in 4526 and held in the name of R.J. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Co-conspirator D.

q.   On or about May 10 2011, and then again on June 7, 2012, a business in Mobile, Alabama filed a fraudulent EB-1C petition on behalf of an individual identified herein as G.G. Documentation in this EB-1C petition indicated that at least $149,830.01 already in a J.P. Morgan Chase account ending in 5465 and held in the name of G.G. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by Co-conspirator D.

r.   On or about December 2, 2013, a business in Cooper City, Florida filed a fraudulent EB-1C petition on behalf of an individual identified herein as J.D. Documentation in this EB-1C petition indicated that at least $299,045.83 already in a J.P. Morgan account ending in 5906 and held in the name of J.D. was intended to be invested in the fictitious joint venture. This fraudulent EB-1C petition was facilitated by China Co-conspirator A and Co-conspirator D.

37.   Bank records show that each of the United States bank accounts described in the paragraph above held at least the amount of money noted in the corresponding fraudulent EB-1C petition prior to the petition being filed with CIS. Further, the money in each of the above-described accounts was deposited into the accounts via international wire transfers, from locations outside of the United States to bank accounts located within the United States.

38.   According to the fraudulent EB-1C petitions, money held in the above-described accounts represented funds available to be invested in the fictitious joint venture, and was therefore property used to facilitate the money laundering scheme, which promoted the visa fraud scheme.

## V.   CLAIM FOR RELIEF

39.   Plaintiff incorporates by reference the allegations in paragraphs 8 through 38 as though fully set forth herein.

40.   Pursuant to Title 18, United States Code, Section 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section

16

1956 . . . of this title, or any property traceable to such property" is subject to forfeiture to the United States.

    41.      Under Title 18, United States Code, Section 1956(a)(2),

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds . . . to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to a fine . . . or imprisonment for not more than twenty years, or both.

    42.      Under Title 18, United States Code, Section 1956(c)(7)(A), the term "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title." Included among the offenses listed in Title 18, United States Code, Section 1961(1) is Title 18, United States Code, Section 1546, which relates to fraud and misuse of visas, permits, and other documents.

    43.      The Defendant Funds are subject to forfeiture under Title 18, United States Code, Section 981(a)(1)(A) because they constitute property involved in, or are traceable to property involved in, a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956(a)(2)(A). Specifically, the Defendant Funds constitute monetary instruments or funds transmitted to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity, that is visa fraud in violation of Title 18, United States Code, Section 1546(a).

    **WHEREFORE,** the United States of America, respectfully requests that warrants of arrest *in rem* of the Defendant Funds be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgement be entered declaring the Defendant Funds condemned and forfeited to the United States of America for disposition

17

according to law; and that the United States of America be granted such other and further relief as

this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 28th day of October, 2016.

KENYEN R. BROWN
UNITED STATES ATTORNEY

By: *s/Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
(251) 441-5845
christopher.bodnar@usdoj.gov

By: *s/Donna B. Dobbins*
Donna B. Dobbins
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
(251) 441-5845
donna.dobbins@usdoj.gov

## **VERIFICATION**

I, S. Craig Underwood, am a Special Agent with the IRS-Criminal Investigations Division. I have read the foregoing Complaint for Forfeiture and assert under penalty of perjury under the laws of the United States of America that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information that I received from others involved in the investigation, including, but not limited to, other law enforcement agents and/or officers.

Dated: October 28, 2016

Special Agent S. Craig Underwood
IRS-Criminal Investigation Division

## **CERTIFICATE OF SERVICE**

On the 28th day of October 2016, I certify that I directed that this complaint, notice of forfeiture action, and warrant for arrest, be electronically filed in the ECF system, and directed that a copy of the same documents be sent by U.S. Postal Service, Certified Mail, Return Receipt Requested, to the following:

| | |
|---|---|
| *On behalf of* L.Z.<br>Richard Shields, esq.<br>507 Church Street<br>Mobile, AL 36602 | *On behalf of W.H., H.C., Z.D., and L.G.*<br>Xiu Mei Dong, esq.<br>1270 Avenue of the Americas, Suite 1800<br>New York, New York 10020 |
| *On behalf of Q.X.*<br>Neal Hanley, esq.<br>158 Congress Street<br>Mobile, AL 36603 | *On behalf of M.Y.*<br>Jainwei Fang, esq.<br>26 Floor, 5 Corporate Ave. 150 Hubin Rd.<br>Huangpu District Shanghai, China 200021 |
| *On behalf of X.Z.*<br>Joseph Tsang, esq.<br>18830 Norwalk Blvd.<br>Artesia, CA 90701 | *On behalf of M.J.*<br>Bin Li, esq.<br>730 North Diamond Bar Blvd.<br>Diamond Bar, CA 91765 |

\*\*\* For all other parties, documents will be sent to last known address based on bank record.