# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> APPROXIMATELY $299,873.70, SEIZED ) <br> FROM BANK OF AMERICA ACCOUNT, ) <br> *et al.*, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. 16-00545-KD-N |

## ORDER

This action is before the Court on the Renewed Motion for Judgment as a Matter of Law, or in the alternative, Request for a New Trial filed by Claimants Hong Wei, Dai Ze, Quinglong Zai, Hongtu Chen, Linlin Guo, Jinmei Dong, and Wang Jian Dong (doc. 269), Supplement to the Motion (doc. 273), Claimant Min Yang's Motion for Judgment as a Matter of Law or in the alternative for New Trial (doc. 272), the United States' Consolidated Response (doc. 276), and the Claimants' reply (doc. 277). Upon consideration, and for the reasons set forth herein, the Motions are DENIED.

I. Background

The United States filed a Verified Complaint for Civil Forfeiture *in rem* to forfeit certain Defendant funds held in bank accounts in the United States based on their connection to an EB1-C visa fraud scheme. The United States alleged that the funds were subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they "constitute monetary instruments or funds transmitted to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity, that is visa fraud." (doc. 1, p. 17) (citing

18 U.S.C. § 1956(a)(2)(A) (money laundering); 18 U.S.C. § 1546 (visa fraud)). The United States alleged that the Defendant funds were deposited in bank accounts to create the appearance of a joint venture between the Chinese nationals who owned the bank accounts and a business in the United States in order to facilitate their immigration to the United States under the EB1-C visa program.

The Chinese nationals filed claims to the Defendant funds. As Claimants, they admitted that they applied for EB1-C visas. However, they asserted that they were "innocent owners" because they lacked knowledge of the conduct – the visa fraud scheme and the money laundering to promote the visa fraud scheme – that resulted in the forfeiture.

The Court presided over a four-day trial. After hearing the evidence, the jury found that the United States had shown that there was a substantial connection between the Defendant funds and the facilitation or commission of a criminal offense and that Claimants Wei, Ze, Zai, Chen, Guo, Dong, Dong and Yang had not shown that they were innocent owners of the seized defendant funds (doc. 267, Order on Jury Trial and Verdict). The Claimants filed their renewed motions for judgment as a matter of law and alternative motions for new trial.

II. Motion for Judgment as a Matter of Law

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). The parties may "file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if

the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

"'Judgment as a matter of law is appropriate when a plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action.'" Williams v. First Advantage LNS Screening Sols. Inc, No. 17-11447, - - - Fed. 3d - - -, 2020 WL 103659, at *5 (11th Cir. Jan. 9, 2020) (quoting Proctor v. Fluor Enters., Inc., 494 F.3d 1337, 1347 n. 5 (11th Cir. 2007)) (quotation marks omitted). "If there is a substantial conflict in the evidence, such that reasonable and fair-minded persons exercising impartial judgment might reach different conclusions, the district court must deny the motion." Id.

The Court's "analysis of a motion for judgment as a matter of law under Rule 50 is the same regardless of whether the analysis 'is undertaken before or after submitting the case to the jury.'" Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007). Therefore, "in ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." Id. To evaluate the sufficiency of the evidence to support the verdict, the Court considers "all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." McGinnis v. Am. Home Mortgage Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016).

A) Substantial connection

The Claimants argue that the United States failed to establish a substantial connection between the Defendant Funds and the money-laundering to promote visa fraud scheme. The Claimants argue that the only evidence presented by the United States "of a transfer of funds to a place in the United States from a place outside the United States were the wire transfers of

Claimants" (doc 269, p. 2). Claimants then assert that the jury was instructed that "money laundering requires a showing of an international transfer of funds conducted 'with the intent to promote the carrying on of a visa fraud scheme'" but the United States "offered no evidence that any wire transfers sent by the Claimants were done 'with the intent to promote a visa fraud scheme." (Id.)

The jury was instructed as follows:

The initial burden of proof lies with the United States to show that there was a substantial connection between the Defendant Funds and the facilitation or commission of a criminal offense, specifically, money laundering to promote visa fraud.

The crime of "money laundering" includes the transfer of funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of certain unlawful activities. One of those unlawful activities is visa fraud.

The crime of "visa fraud" includes the making of certain material false statements in connection with information submitted with a visa application.

To prove "substantial connection" the Government must prove by a preponderance of the evidence that the use of the Defendant Funds made the money laundering to promote visa fraud scheme easy or less difficult, or ensured that the scheme would be more or less free from obstruction or hindrance.

The Defendant Funds are not subject to forfeiture unless this substantial connection between the Defendant Funds and the alleged money laundering to promote visa fraud is proven by the Government by a preponderance of the evidence.

The United States was not required to prove that the Claimants had the intent to promote a visa fraud scheme. Rather, the United States was required to prove that someone facilitated the transfer of funds with intent to promote a visa fraud scheme. This burden was met by Tom Wayne's testimony that he, Bobby Wang and David Jiminez told the Chinese claimants to

4

support their application for an EB1-C visa by transferring approximately $300,000 to a U.S. bank account and that Wayne's, Wang's and Jiminez' intent was to use the account to make it appear to INS that the Claimant was guaranteeing the success of the joint venture (which Wayne, Jiminez and Wang knew to be a fake joint venture).

B) <u>Transfer of the Defendant funds</u>

Claimants Wei, Ze, Zai, Chen (doc. 273) and Yang (doc. 272), also argue that the United States failed to present sufficient evidence that the transfer of the Defendant funds was from <u>outside</u> the United States to a place <u>inside</u> the United States. Specifically, the Claimants argue that there "was no evidence presented as to where the actual transaction which resulted in the funds being placed into the East West Bank account occurred, or whether the funds ever left China" (doc. 272, 273).

With respect to Yang, the United States' Exhibit 11-10, p. 12, shows a deposit of $299,975.00 into East West Bank at Pasadena, California by way of "incoming wire". The account opening information shows Yang's address in China. With respect to Zai, United States' Exhibit 14-7, p. 9, shows an incoming wire transfer of $249,984.56 into East West Bank in Pasadena, California. The account opening information shows Zai's address in China.

With respect to Wei, United States' Exhibit 2-6, shows routing information for a series of six transfers of slightly less than $50,000, wired into the East West Bank in the United States, which originated in China. Exh. 2-6, p. 19, p. 108. With respect to Ze, United States' Exhibit 5-6, p. 14, shows a series of five wire transactions of $50,000 each received into his account at East West Bank in the United States. Each transaction was linked to a different Chinese name. With respect to Chen, United States' Exhibit 9-6, pgs. 66 and 72, show transfers from China of $50,000 or slightly less to the East West Bank in the United States. See also Exhibit 9-6, pgs.

16, 18, 20 and 34. At trial, Tom Wayne testified that in his experience, the Republic of China restricted the transfer of Chinese currency to U.S. Dollars to transactions of $50,000 or less per person per year. Wayne also testified that Chinese nationals were permitted to transfer more than $50,000 if they used a direct close relative or friend to wire the funds and that the Claimants in this case had used their relatives to wire out funds.

To evaluate the sufficiency of the evidence to support the jury's verdict, the Court must consider "all the evidence, together with any logical inferences, in the light most favorable" to the United States as the non-moving party. McGinnis, 817 F.3d at 1254. Based on the bank records, Wayne's testimony, and the agent's testimony, the jury could reasonably find that these Defendant funds were wired from China to the United States. While these bank records may not be conclusive that China was the source of the wire transfers, the appearance of attempted compliance with Chinese banking regulation, the account ownership information, and Tom Wayne's testimony explaining why the banking transactions occurred, is sufficient evidence to sustain the jury's verdict.

C) Innocent owner defense

The Claimants argue that they are entitled to judgment as a matter of law because they met their burden to prove that they are innocent owners (doc. 269, p. 2-3; doc. 274, p. 6-7). The Claimants argue that the great weight of the evidence offered by the United States through its witnesses shows that the "illegal aspects of the visa application were all the product of acts by the criminal co-conspirators and not the Chinese claimants" (doc. 272, p. 6-7). The Claimants argue that through cross-examination of the United States' witnesses, and the evidence in the exhibits, they have met their burden to show innocent ownership (doc. 269, p. 3). The Claimants point out that on cross examination of the United States' witnesses they elicited the fact that the

Claimants did not create any of the fraudulent documents in their immigration files, including the false visa submissions, forged signatures, backdated joint venture agreements, and undated signature pages (Id.; doc. 272, p. 7).

However, the jury determined that this fact did not sustain the Claimants burden to prove that he or she did not know the funds were being used to promote a visa fraud scheme. And considering all the evidence and logical inferences therefrom, in the light most favorable to the United States the Court finds that there was sufficient evidence to support the verdicts against the Claimants.

D) Due process

Claimants Ze Dai, Linlin Guo, Xindong Zhang, and Jiandong Wang argue that their Fifth Amendment right to due process was violated because the United States interfered with their ability to appear at trial by denying their visas or parole into the United States (doc. 269, doc. 255). In view of the jury's verdicts in favor of all the Claimants who appeared at trial,[1] the Claimants argue that they were denied a meaningful opportunity to be heard (Id.)

Prior to trial, the Court denied the Claimants' motion to dismiss which asserted that they had a due process right to be present for trial (doc. 258). The Claimants now argue that the Court's earlier reliance on Helminski v. Ayerst Labs, 766 F. 2d 208, 213(6th Cir. 1985) was misplaced. In Helminski the court held that "neither the Fifth Amendment's due process clause nor the Seventh Amendment's guarantee of a jury trial grants to a civil litigant the absolute right to be present personally during the trial of his case…. Consistent with due process the right to be present may be sufficiently protected in the party's absence so long as the litigant is represented

---

[1] Xindong Zhang did not appear at trial ,but the jury found in his favor regarding the $12,367.82 seized from his account by the United States.

by counsel." Id. The Claimants point out that a close reading of the case shows that a party has the "Fifth Amendment right to be physically present at all phases of a trial" with exception only for parties whose presence "may be deemed prejudicial or is unable to comprehend the proceedings or aid counsel" (doc. 269, p. 5). The Claimants argue that the Court may not arbitrarily exclude a party from trial, merely because the party is represented by counsel.

The United States points out that nonresident aliens have no constitutional right to entry into the United States for any purpose (doc. 276, p. 15). And that although a foreign national has the right to invoke the protection of the United States to their property, that is what happened here; the Claimants filed their claims and pursued them through counsel. (Id.)

With respect to Helminski, the Claimants appear to argue that the Court's reliance upon the case resulted in an arbitrary decision by the Court to exclude them from the trial. However, the Court cited the case for its finding that civil litigants' rights to be present at trial are analyzed under the Due Process Clause and that their rights may be protected in their absence when represented by counsel. Moreover, the Court agrees with the United States that the due process afforded a foreign national is to be able to present his claims, not necessarily to be present. The Court finds no basis to change its decision.

III. Motions for new trial

Rule 59 of the Federal Rules of Civil Procedure, in relevant part, provides that the "court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). Generally, the "losing party may … move for a new trial under Rule 59 on the grounds that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair ... and may raise

questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" McGinnis v. American Home Mortgage Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)).

Thus, the Rule "allows a district court to order a new trial based on insufficient evidence, but 'only if the verdict is against the clear weight of the evidence or will result in a miscarriage of justice.'" Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504, 521 (11th Cir. 2019) (quoting Chmielewski v. City of St. Pete Beach, 890 F.3d 942, 948 (11th Cir. 2018) (quotation marks omitted). "'Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great — not merely the greater — weight of the evidence.'" Id. (quoting Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (quotation marks omitted)). "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." McGinnis, 817 F. 3d at 1255 (citation omitted).

For reasons explained in denying the Claimants' motion for judgment as a matter of law, Claimants' alternative motion for a new trial is without merit.

IV. Conclusion

For the reasons set forth herein, the Claimants' Motions for Judgment as a Matter of Law are DENIED and Claimants' alternative Motions for New Trial are DENIED.

**DONE** and **ORDERED** this 22nd day of January 2020.

s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**