IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | )    Civil Action No. 16-00545-KD-N |
| | ) |
| Approximately $299,873.70 seized from a | ) |
| Bank of America Account, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This action is before the Court on Claimants Minjuan Jiang, Zhang Xindong, Ling Shao, Qiang Xu, Yonghon Qiu, and Lixin Zhao's Motions for Relief pursuant to 28 U.S.C. § 2465 of the Civil Asset Forfeiture Reform Act (CAFRA) (docs. 291, 292, 295, 296, 297, 328),[1] the Claimants' supplements to their motions (docs. 331, 333, 335, 350[2]), and the United States' responses (docs. 311, 334, 336, 341). Upon consideration, and for the reasons set forth herein, the Claimants' Motions are GRANTED, as follows:

I. Pre-judgment Interest

Claimants request an award of the interest paid to the United States from the date the funds in their bank accounts were seized. Claimants move pursuant to 28 U.S.C. § 2465(b)(1)(C)(i). They also seek an award of imputed interest pursuant to 28 U.S.C. § 2465(b)(1)(C)(ii), for any non-excluded time period during which interest was not paid on the funds. The parties do not dispute that Claimants have substantially prevailed in this litigation

---

[1] The Claimants' respective motions for return of property included in their motions for relief are MOOT. The seized funds have been returned to the prevailing Claimants (doc. 311, n.1; doc. 324; doc. 328).

[2] Zhao's motion to amend is (doc. 350) GRANTED.

(doc. 341, p.1).

The statute provides that the "United States shall be liable for- - in cases involving currency, …

> (i) interest actually paid to the United States from the date of seizure or arrest of the property that resulted from the investment of the property in an interest-bearing account or instrument; and

> (ii) an imputed amount of interest that such currency, instruments, or proceeds would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid (not including any period when the property reasonably was in use as evidence in an official proceeding or in conducting scientific tests for the purpose of collecting evidence), commencing 15 days after the property was seized by a Federal law enforcement agency, or was turned over to a Federal law enforcement agency by a State or local law enforcement agency.

28 U.S.C. § 2465(b)(1)(C).

The United States points out that imputed interest under subparagraph (C)(ii) begins to accrue on the fifteenth day following seizure. The United States asserts that the funds were deposited into either the Treasury Forfeiture Fund or ICE Suspense Accounts within 14 days of seizure; therefore, subparagraph (C)(ii) does not apply (doc. 334).

With respect to interest actually accrued, as described in subparagraph (C)(i), Claimants and the United States agree that Claimants are entitled to an award of pre-judgment interest as follows:

| | |
|---|---|
| Minjuan Jiang | $13,282.18 |
| Xindong Zhang | $547.67 |
| Qiang Xu / Ling Shao | $13,283.29 |
| Yonghong Qui | $13,286.20 |
| Lixin Zhao | $8,476.33 |

(Docs. 334, 336).

Accordingly, judgment having been entered in favor of the Claimants (doc. 268), pre-

judgment interest in the amounts indicated herein is awarded to the Claimants, pursuant to 28 U.S.C. § 2465(b)(1)(C)(i).   At Claimants' request, the United States is directed to pay the pre-judgment interest by delivery of same to their respective counsel.

II. <u>Post-judgment interest</u>

Claimants request an award of post-judgment interest pursuant to 28 U.S.C. § 2465(b)(1)(B), which provides for an award of interest as set forth in 28 U.S.C. § 1961. The United States calculated the amount of interest due from the date of the judgment, October 24, 2019, through April 20, 2020 and calculated the per diem amount which will continue to accrue until paid.  Claimants and the United States have agreed to the calculation, as set forth:

| | | |
|---|---|---|
| Minjuan Jiang | $2,353.54 | Per diem: $13.15 |
| Xindong Zhang | $97.04 | Per diem: $0.54 |
| Qiang Xu / Ling Shao | $2,353.74 | Per diem: $13.15 |
| Yonghong Qui | $2,352.81 | Per diem: $13.14 |
| Lixin Zhao | $1,500.74 | Per diem: $8.38 |

Accordingly, judgment having been entered in favor of the Claimants (doc. 268), post-judgment interest in the amounts indicated herein, plus interest accruing since April 20, 2020 to the date of payment, is awarded to the Claimants pursuant to 28 U.S.C. § 2465(b)(1)(B).  At Claimants' request, the United States is directed to pay the post-judgment interest by delivery of same to their respective counsel.

III. <u>Attorneys' fees and costs</u>

Claimants also assert that as prevailing parties, they are entitled to reasonable attorney's fees and costs of litigation reasonably incurred in this litigation pursuant to 28 U.S.C. § 2465(b)(1)(A).  The United States does not dispute that Claimants substantially prevailed for purposes of the statute (doc. 341, p. 1).

Title 28 U.S.C. § 2465(b)(1)(A) provides that "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for reasonable attorney fees and other litigation costs reasonably incurred by the claimant." The "stated purpose of CAFRA is 'to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures.'" United States v. Certain Real Prop., Located at 317 Nick Fitchard Rd., N.W., Huntsville, AL, 579 F.3d 1315, 1322 (11th Cir. 2009) (citation omitted).

In the Eleventh Circuit, "[t]o calculate reasonable attorneys' fees, courts are to consider the number of hours reasonably expended on the litigation, together with the customary hourly rate for similar legal services." Padurjan v. Aventura Limousine & Transp. Serv., Inc., 441 Fed. Appx. 684, 686 (11th Cir. 2011) (citation omitted). Multiplying the number of hours reasonably expended by the customary hourly rate yields the lodestar. Id. (citation omitted). The lodestar may be adjusted "as necessary in the particular case[.]" Id. (citation omitted). However, "there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008).

To adjust the lodestar, the "district court also may consider other factors[3] identified in

---

[3] The Johnson factors are "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Bivins, 548 F.3d at 1350 n.2 (citing Johnson, 488 F.2d at 717–19).

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–719 (CA5 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 434 n.9, 103 S. Ct. 1933, 1940 n.9 (1983); In re Home Depot, Inc., 931 F. 3d 1065, 1091 (11th Cir. 2019) ("The crucial point, under both line of precedents, is that the *Johnson* factors are largely redundant to the lodestar analysis because they are almost always subsumed in the lodestar. Consequently, it would be inefficient, to say the least, to require district courts to slog through the *Johnson* factors when those factors have little independent bearing on the analysis.").  Thus, "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.'" Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550, 553, 130 S.Ct. 1662 (2010).

  A. Reasonable hourly rate

  The Court of Appeals for the Eleventh Circuit instructs that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). In this case, the relevant legal community is the Southern District of Alabama. American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed[ ]'").

  The Court, which is familiar with the prevailing rates in this market, may act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested rates. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). "Moreover, this

Court's prior awards are relevant and instructive in determining whether the 'requested rate is in line with prevailing market rates' in this district for attorneys of reasonably comparable skill, experience, and reputation to the attorney seeking an award of fees." <u>Nail v. Shipp</u>, 2020 WL 1670459, at *2–3 (S.D. Ala. Apr. 3, 2020) (slip copy).

Claimant Jiang asserts that $300.00 is a reasonable hourly rate for William K. Bradford (doc. 335). In support, counsel states that he began practicing in 1993 and has 26 years of experience including criminal defense and appeals, criminal prosecutions at the municipal level, divorce, civil trials and appeals, labor and employment law, and insurance defense and coverage litigation. Since 2006, he has focused on criminal defense, general civil defense, and criminal and civil appeals.  Counsel states that he has handled over 200 matters including trials, in all federal district courts in Alabama; over 37 criminal and civil appeals in the Court of Appeals for the Eleventh Circuit; and nearly 150 appeals and petitions in the State of Alabama.  Counsel currently charges $300.00 per hour and believes that this rate is commensurate with the prevailing hourly rate in the relevant legal community for counsel of comparable skill, experience and reputation.

Claimant Zhang asserts that $450.00 is a reasonable hourly rate for Robert G. Amsel (doc. 331). In support, counsel states that he has practiced law for 38 years and has an excellent reputation in the legal community. Also, he is board certified by the Florida Bar as a specialist in criminal trial law and has been an Adjunct Professor of Law at the University of Miami School of Law in the Litigation Skills Department for the past 30 years. His hourly rate in Miami, Florida is $750.00, but upon inquiry in this area, asserts that a reasonable hourly rate is $450.00 for a trial attorney with comparable skill, experience, and reputation.

Claimants Qiang Xu, Ling Shao, and Yonghong Qiu assert that $250.00 is a reasonable

hourly rate for N. Stewart Hanley and $200.00 is a reasonable hourly rate for Rebecca Ding-Lee (doc. 333).  In support, Hanley states that he has practiced law in Mobile, Alabama for nine years and has "extensive and broad criminal and civil litigation experience" in state and federal courts as well as the Court of Appeals for the Eleventh Circuit. (Id., p. 1). He states that he presently serves as vice-president of the Mobile Criminal Defense Lawyers Association. Hanley asserts that he was lead counsel, with Ding-Lee as co-counsel, and responsible for the "bulk of research, filings, preparation, and litigation" (Id)  Counsel charges an hourly rate of $250.00 and asserts that this rate is "commensurate with the prevailing hourly rate in the Mobile legal community by lawyers of reasonably comparable skills, experience, and reputation." (Id.)

Co-counsel Ding-Lee states that she has practiced law in Mobile, Alabama for nine years. She states that her practice focuses on criminal, immigration, and business law.  Ding-Lee states that she is the only native-born Chinese attorney and only attorney fluent in Chinese in the Mobile, Alabama area. She obtained her law degree in China and LL.M in International Law from the University of Alabama.  Ding-Lee states that her work was "vital to ensure adequate communication with and preparation of the Claimants for depositions and trial" because the Claimants she represented only had a rudimentary ability to communicate in English (Id., p. 2).  Her charged hourly rate is $ 200.00 which Claimants assert is "commensurate with the prevailing hourly rate in the Mobile legal community by lawyers of reasonably comparable skills, experience, and reputation; particularly in consideration of her unique background and skillset." (Id.).

Claimant Lixin Zhao asserts that $250.00 per hour is a reasonable hourly rate for Richard E. Shields (doc. 332). In support, counsel states that he has been practicing law for almost 39 years and his office is in Mobile, Alabama.  Shields states that his current hourly rate is $300.00; however, his contract with Zhao provides for an hourly rate of $250.00. Counsel also states that his experience in this legal community shows that acceptable hourly rates range from $200.00 to

$450.00.

The United States does not dispute that the attorneys are qualified but argues generally that the Claimants have not submitted sufficient evidence to support the claimed hourly rates. Primarily, that Claimants did not provide an affidavit or declaration of a local attorney, which addressed the customary fees for similar work in the Mobile legal community, and the experience, reputation, and ability of counsel in this action. The United States points out that in recent cases hourly rates in this district court include $350.00 per hour for attorneys with 25 to 35 years of experience, $325.00 per hour for attorneys with 12 to 14 plus years of experience, and $250.00 per hour for attorneys with 6 years of experience (doc. 341, p. 6).[4]   The United States asserts "these rates are representative of the Mobile legal market" and "may be instructive in calculating" the lodestar. (Id.)

The law is well established that the "court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988); Ibezim v. GEO Grp., Inc., 786 Fed. Appx. 975, 976–77 (11th Cir. 2019) ("As for assessing the reasonableness of attorney's fees, the district court is qualified to make this decision based on its years of experience.").  "Therefore, where documentation or testimonial support is lacking, the court may make the award on its own experience." Coastal Fuels Mktg., Inc. v. Fla. Exp. Shipping Co., 207 F.3d 1247, 1252 (11th Cir. 2000); Engeling v. Bashlin Indus., Inc., 2019 WL 3757784, at *1 (N.D. Ga. Feb. 7, 2019) (slip copy) ("'Where documentation is inadequate, the

---

[4]  The United States cites two recent decisions by this Court as the source of these hourly rates. Stevens v. Mobile County Board of School Commissioners, 2020 WL 1921557 (S.D. Ala. Apr. 20, 2020); Nail v. Shipp, 2020 WL 1670459 (S.D. Ala. Apr. 3, 2020).

8

district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing.'") (quoting <u>Norman</u>, 836 F. 2d at 1303).

The Court has considered counsels' respective years of experience, areas of expertise, reputation, skill, and ability.  The Court has also considered the novelty and difficulty of pursuing a CAFRA claim arising from a complex criminal action involving an extensive Visa fraud scheme carried out in the United States and China, the skill required to successfully pursue these CAFRA claims, and counsel's success in asserting the innocent owner defense at trial.[5] The Court has also considered the hourly rates customarily awarded in this District and Counsels' statements regarding their customary or contracted hourly rates.  Therefore, relying upon the foregoing and its own knowledge and experience with respect to reasonable hourly rates in this District, the Court finds the following hourly rates are reasonable:

| | | |
|---|---|---|
| Minjuan Jiang | $ 300.00 | William K. Bradford |
| Xindong Zhang | $ 350.00 | Robert G. Amsel |
| Qiang Xu, Ling Shao, Yonghong Qui | $ 250.00 $ 200.00 | N. Stewart Hanley Rebecca Ding-Lee |
| Lixin Zhao | $ 250.00 | Richard E. Shields |

B. <u>Work performed and hours reasonably expended</u>

---

[5] Certain <u>Johnson</u> factors are not at issue.  Claimants did not assert that civil asset forfeiture litigation was undesirable, that time limitations were imposed either by their clients or the litigation, that this representation had prevented them from representing other clients, or that the nature and length of the professional relationships was relevant to a determination of attorneys' fees.  (<u>See</u> doc. 341, United States' response).

The Court next determines the hours reasonably expended on the litigation. To do so, the Court may exclude hours for work performed that was "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434.  The Court may also discount a time entry "where the description of the work performed is overly vague." McConnell v. Am. Gen. Life Ins., Co., 2020 WL 3452983, at *9 (S.D. Ala. June 24, 2020) (internal quotes omitted). The Court may also reduce the hours claimed where "block billing" prevents a meaningful review of the hours. "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." McConnell v. Amer. Genl. Life Ins., 2020 WL 3452983, *9 (S.D. Ala. June 24, 2020) (quoting Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC, 476 Fed. Appx. 198, 203 (11th Cir. 2012). "This objectionable practice 'makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task,'. . . which in turn 'mak[es] it difficult for the court to gauge reasonableness.'" Id. (citation and internal citation omitted). Overall, if the Claimants' request is unreasonably high, the Court may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board reduction. Bivins v. Wrap it Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008).

### 1. Claimant Minjuan Jiang

Jiang submits time entries for 134.7 hours of work performed by counsel Bradford (doc. 335). He argues that "[a]mong the factors that the Court should consider in determining an award of attorney's fees is the relative novelty and difficulty of the case." (doc. 335, p. 3). Jiang points out that the number of lawyers with experience in CAFRA litigation is limited, that CAFRA is not a "mainstream area of practice", and that it "requires knowledge of a distinct set of rules and legal standards." (Id.).  Jiang also asserts that this was not a typical forfeiture matter, but instead

was based on money laundering as part of a extensive EB-1C Visa fraud scheme.  Jiang also

asserts that in assessing the difficulty of the case, the Court should also consider the fact that the

Claimants were Chinese nationals with limited or no proficiency in English.  Jiang also points

out that the United States was an opponent with "vastly greater resources at its disposal" (Id.)

Last, Jiang states that the anticipated length[6] of trial was considerably longer than the actual trial,

and that the trial preparation work reflected in the time entries was based upon "this anticipated

length [of trial] and number of witnesses." (Id.)

The United States argues generally that the Claimants have not submitted sufficient

evidence to support the reasonableness of the work performed. Primarily, that Claimants did not

provide an affidavit or declaration of a local attorney, which addressed the customary fees for

similar work in the Mobile legal community, and the experience, reputation, and ability of

counsel in this action (doc. 341).

With respect to Jiang, the United States argues that his time entries contain a "few instances

of block billing" doc. 341, p. 7).  For example, the October 3, 2018, entry for 4.7 hours and the April

15, 2019 entry for 7.5 hours. (Doc. 335 at 7-8, PageID.1515-1516).

Review of the specific time entries shows that on October 3, 2018, counsel spent 4.7 hours to

"[p]repare and serve responses to Govt. RFP / interrogatories. Preparation of responses beforehand,

gathering documents, communications with counsel in California about responsive documents,

review documents sent in response, etc." (doc. 335, p. 7). Also, on April 15, 2019, counsel spent 7.5

hours for review and analysis of "over 1.0 gigs of materials" received as discovery from the United

States (Id., p. 8). As previously stated, block billing "occurs when an attorney lists all the day's

---

[6] In the joint pretrial document, the parties estimated 7 to 10 days, exclusive of jury selection and
that the United States expected to call 30 witnesses. (doc. 205, p. 7).  The United States called 4
witnesses and concluded its case in 2 days (doc. 267).

tasks on a case in a single entry, without separately identifying the time spent on each task."
McConnell, 2020 WL 3452983 at *9. However, all the work done on October 3, 2018 was in
response to discovery requests and all the work done on April 15, 2019 was to review and analyze
discovery produced, and not on separate or unrelated tasks.

     2. Claimant Xindong Zhang

     Zhang submits time entries for 118.5 hours of work performed by counsel Amsel (doc.
331, p. 3-5). The United States argues that Zhang's time entries "contain impermissible block
billing and entries that span across multiple time periods" and that many "entries are simply
entitled 'Email' or 'Conference Call'. . . but no explanation about who the communication is to
or from and whether the communication even relates to the case at hand." (doc. 341, p. 7).

     The Court, without proof, will not find that counsel submitted time for work that does not
relate to this action. Arguably, a more detailed description of the "email" or "conference call"
could have been made, but the lack of specificity does not call into question whether the work
was performed in this action. The entries titled "email" are vague and arguably lack sufficient
description for the Court to determine whether the time was reasonably expended. However,
these vague entries consist of 20 emails. Since this action spanned several years, it is not
unreasonable for counsel to have sent 20 emails, the longest of which requiring .75 hours, related
to this action. Same is true for the vague "conference call" time entries. Counsel logged time for
five conference calls, the longest of which requiring .50 hours. Again, since this action spanned
several years, it is not unreasonable for counsel to have participated in five conference calls
related to this action.[7]

_____

[7] In some circumstances, the time entries coordinate with other counsel's time entries. For
example, although Zhang's counsel did not indicate who participated in the April 2, 2018
conference call, Zhao's counsel entered "conference call with other defense lawyers and the U.S.
(Continued)

With respect to block billing, as with Jiang, the work performed during large blocks of time are for specific related tasks.  For example, on August 13, 2018, counsel spent 4.0 hours preparing and filing answers to requests for production. Also, with respect to the time entries that "span across multiple time periods", counsel appears to have consolidated the time entries for related work, instead of separating the time spent each day. Specifically, August 11 – 13, 2018, for review of documents from client (6.3 hours); August 8 – 13, 2018, for preparation and filing of answers to interrogatories (6.7 hours); and August 28 – 29, 2019, for pretrial conference and meetings with co-counsel and the United States (2.5 hours), Hypothetically, counsel could have recorded a time entry for each day, but the Court would have the same information, that Counsel spent a certain amount of time on a specific task.  Based on the Court's knowledge of this litigation, the time expended and work performed appears reasonable.

### 3. Claimants Qiang Xu, Ling Shao, and Yonghong Qui

Xu and Shao submit time entries for 128.6 hours of work performed by counsel Hanley and 33 hours of work performed by counsel Ding-Lee (doc. 333, p. 7).  Qui submits time entries for 102.3 hours of work performed by counsel Hanley and 37.4 hours of work performed by counsel Ding-Lee (doc. 333).[8]   The United States responds that the time entries submitted do not appear to contain block billing, except for trial  (doc. 341, p. 7).

---

Attorney" (doc. 350-2, p. 2).

[8] Ding-Lee's ability to communicate with the Claimants during this action and knowledge of the law was a distinct and separate contribution to their representation. See McConnell v. Am. Gen. Life Ins. Co., No. CV 19-0174-WS-MU, 2020 WL 3452983, at *7 (S.D. Ala. June 24, 2020) (allowing fees for more than one attorney where there was "no duplication of effort but rather a distinct contribution by each lawyer.")

The challenged time entries show work for "trial prep", "trial", "trial prep w/ client", "trial day", "closing argument prep", "Trial/closing arguments" and "Trial / jury verdict" (doc. 333, p. 7, 12). Again, this is not the type of time entry which constitutes block billing. Although counsel did not set out exactly what work was done on a given day to prepare for trial, this is not the circumstance where "an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." McConnell, 2020 WL 3452983 at *9. Instead, there was one task – trial preparation.

5. Claimant Lixin Zhao

Zhao submits time entries for 139.9 hours of work performed by counsel Shields (doc. 332, amended at doc. 350, to correct a mathematical error). The United States argues that the time entries "are confusing as some entries appear to be communications from 2016 with 'Stella,' who is not the client (Mr. Zhao) and it is not clear whether these communications pertain to the case at hand." (doc. 341, p. 7).

As with Zhang's counsel, the Court, without proof, will not find that Zhao's counsel submitted time for work that does not relate to this action. Arguably, a more detailed description could have been made, but the lack of specificity does not call into question whether the work was performed in this action. Moreover, counsel spent 1.0 hours for the phone consults with "Stella" (doc. 350-1, p. 2-3).

The Court has reviewed Claimants' counsels' submissions in support of their requests for attorney fees and the United States' response. The Court has considered the relevant Johnson factors, primarily the novelty and complexity of this action and the skill required to prosecute a claim to seized property. The Court acknowledges that civil forfeiture actions rely upon a narrow, specific and complex body of law, and that civil asset forfeitures trials are not common.

14

The Court also acknowledges that the Claimants are Chinese nationals who have been represented to the Court as without the ability, or with limited ability, to read, speak and understand English, which further contributes to the novelty and complexity of this action. Additionally, issues surrounding certain Claimants capacity to appear at trial in the United States added to the complex and difficult nature of the case and necessitated additional communication, research, and briefing on the part of the United States and the Claimants. With respect to discovery, counsels' entries consistently indicate a substantial amount of time spent reviewing discovery provided by the United States and responding to interrogatories and requests for production, as well as preparing and serving their own discovery upon the United States.

Moreover, this forfeiture action was related to the criminal trial of David Jimenez, who was prosecuted for his involvement in an extensive EB-1C visa fraud and money laundering scheme. Many witnesses in the criminal trial were among the 30 witnesses identified by the United States in this trial. As a result, Claimants' counsel expended time to review and analyze the Jimenez trial transcripts in preparation for the trial in this action.

And, as Claimants' counsel point out, the parties informed the Court that trial would last 7 to 10 days, that the United States expected to call 30 witnesses, and the Claimants expected to call 7 witnesses (doc. 205, p. 7-8, joint pretrial document). As a result, counsel spent time preparing for a lengthy trial with at least 30 witnesses for the United States. The United States rested its case after 2 days and called only 4 witnesses.

Accordingly, the following time was reasonably incurred in this action:

| | | |
|---|---|---|
| Minjuan Jiang | 134.7 hours | William K. Bradford |
| Xindong Zhang | 118.15 hours | Robert G. Amsel |
| Qiang Xu, Ling Shao | 128.6 hours<br>33 hours | N. Stewart Hanley<br>Rebecca Ding-Lee |

15

| Yonghong Qui | 102.3 hours<br>37.4 hours | N. Stewart Hanley<br>Rebecca Ding-Lee |
|---|---|---|
| Lixin Zhao | 139.9 hours | Richard E. Shields |

### C. The Lodestar

| Minjuan Jiang | 134.7 hours x $300.00 = $40,410.00 | William K. Bradford |
|---|---|---|
| Xindong Zhang | 118.15 hours x $350.00 = $41,352.50 | Robert G. Amsel |
| Qiang Xu, Ling Shao | 128.6 hours x $250.00 = $32,150.00<br>33 hours x $200.00 = $6,600.00 | N. Stewart Hanley<br>Rebecca Ding-Lee |
| Yonghong Qui | 102.3 hours x $250.00 = $25,575.00<br>37.4 hours x $200.00 = $7,480.00 | N. Stewart Hanley<br>Rebecca Ding-Lee |
| Lixin Zhao | 139.9 hours x $250.00 = $34,975.00 | Richard E. Shields |

### D. Adjustment of the lodestar

After reviewing the docket and considering the argument and evidence submitted by the United States and Claimants with respect to attorney's fees, the Court finds that an adjustment to the lodestar is not required. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554, 130 S. Ct. 1662, 1674, 176 L. Ed. 2d 494 (2010) (finding that rare and exceptional circumstance may merit an adjustment to the lodestar).

### E. Costs of litigation reasonably incurred

As previously stated, CAFRA provides that "the United States shall be liable for … reasonable attorney fees and other litigation costs reasonably incurred by the claimant[.]" 28 U.S.C. § 2465(b)(1)(A). See United States v. $80,891.25 in U.S. Currency, No. 4:11-CV-183, 2012 WL 170155, at *3 (S.D. Ga. Jan. 19, 2012) ("The mandate of CAFRA in this context is clear. *See* 28 U.S.C. § 2465(b)(1)(A) ("[T]he United States *shall* be liable for ... reasonable

16

attorney fees and other litigation costs reasonably incurred by the claimant.") (emphasis in original).

Claimant Jiang did not submit any costs of litigation.

Claimant Zhang seeks an award of litigation costs for the following:

| | | |
|---|---|---|
| 09/24/2019 | David Jimenez transcripts (pacer) | $47.90 |
| 09/26/2019 | David Jimenez transcripts (pacer) | $206.30 |
| Air Fare | | $1,303.50 |
| Hotel | | $2,626.64 |
| Uber | | $151.70 |
| Car Rental | | $51.57 |
| Total | | $4,387.61 |

The United States does not object to the transcript costs and acknowledges that they were likely needed for trial preparation (doc. 341, p. 8). The Court agrees. The criminal prosecution of David Jimenez formed the basis for this civil asset forfeiture action. Information obtained from the transcripts could be necessary for trial preparation. Consequently, costs of obtaining the transcripts would be reasonably incurred. The United States objects to the remainder of costs because there is no supporting documentation. The United States asserts that it is "unable to evaluate their 'reasonableness'" (doc. 341, p. 8). Although counsel did not provide receipts to document these travel and lodging expenses, the Court is aware that counsel traveled from Florida to attend trial and that trial lasted five days which spanned an eight-day time frame.[9] Additionally, the Court is aware that counsel traveled from Florida to attend the final pretrial conference. Thus, the travel and lodging expenses do not appear to be excessive or unreasonably incurred. Therefore, costs are awarded in the amount of $4,387.61.

Claimants Qiang Xu and Ling Shao seek an award of litigation costs for the following:

| | |
|---|---|
| Deposition transcripts | $295.85 |

_____

[9] Trial began Tuesday October 15, 2019. Trial recessed on Friday October 18 for a court-wide training session. Trial resumed October 21 and the jury returned its verdict on October 22.

| | |
|---|---|
| Flight and lodging | $1,278.50 |
| Jimenez trial transcript | $107.15 |
| Total | $1,681.50 |

(Doc. 333, p. 8).

Claimant Yonghong Qui seeks an award of litigation costs for the following:

| | |
|---|---|
| Deposition transcripts | $238.00 |
| Flight and lodging | $1,278.50 |
| Jimenez trial transcript | $107.15 |
| Total | $1,623.65 |

(Doc. 333, p. 13).

The United States does not object to the transcript costs on basis that these costs were reasonably incurred in connection with trial preparation (doc. 341, p. 8). The Court agrees. As previously stated, the criminal prosecution of David Jimenez formed the basis for this civil asset forfeiture action. As a result, information obtained from the transcripts could be necessary for trial preparation. The Claimant's deposition testimony could be necessary for trial preparation or possible use at trial.

However, the United States objects to the costs of flight and lodging because there is no "evidence of record supporting these costs and the United States is unable to evaluate their reasonableness" (doc. 341, p. 8). The docket indicates that Xu, Shao, and Qui were noticed for deposition in November 2018 (doc. 167). The time entries indicate that Hanley and Ding-Lee went to Chicago, Illinois for depositions from November 27 through 29 and returned on November 30, 2018 (doc. 333, p. 4-5, p. 7-8). Although counsel did not provide documentation for the flight and lodging expenses, the docket and time entries indicate that the costs were reasonably incurred by the Claimants. Therefore, costs are awarded in the total amount of $3,305.15.

Claimant Zhao seeks costs for "Fed Ex" in the amount of $83.56 for shipping on March 29, 2017 (doc. 332-1, p.2).  The United States objects because "there is no explanation of what the charge relates to." (doc. 341, p. 8).  Although counsel did not explain what may have been shipped, Shields filed a notice of appearance for Zhao in February 2017.  Shipping documents to his client in March 2017, does not appear unreasonable.  Therefore, costs are awarded in the amount of $83.56.

IV. <u>Conclusion</u>

Upon consideration, pre-judgment interest and post-judgment interest are awarded to the Claimants as set forth herein, and the Court finds that the United States is liable to the Claimants for attorney's fees and costs, as follows:

Claimant Jiang in the total amount of $40,410.00;

Claimant Zhang in the total amount of $45,740.11;[10]

Claimants Xu and Shao in the total amount of $40,431.50;[11]

Claimant Qiu in the total amount of $34,678.65;[12] and

Claimant Zhao in the total amount of $35,058.56.[13]

**DONE** and **ORDERED** this 17th day of August 2020.

**/s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[10] $41,352.50 attorney's fee + $4,387.61 litigation costs = $45,740.11.

[11] $32,150.00 attorney's fee + $6,600.00 attorney's fee + $1,681.50 litigation costs = $40,431.50.

[12] $25,575.00 attorney's fee + $7,480.00 attorney's fee + $1,623.65 litigation costs = $34,678.65.

[13] $34,975.00 attorney's fee + $83.56 litigation costs = $35,058.56.